IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED KING,

      Petitioner,                    No. 2: 09-cv-2366 FCD KJN P

   vs.

JOHN HAVILAND, et al.,

      Respondents.            FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Petitioner is a state prisoner proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1980, petitioner was convicted of second degree murder. Petitioner is serving a sentence of 15 years to life.

      In the instant action, petitioner challenges the 2008 decision by the California Board of Parole Hearings ("BPH") finding him unsuitable for parole.[1] This action is proceeding on the petition filed by petitioner on August 25, 2009. Petitioner alleges that the 2008 decision by the BPH finding him unsuitable for parole was not supported by sufficient evidence.

////

---

[1] It is unclear from the record how many prior suitability hearings petitioner has had.

1

After carefully considering the record, the undersigned recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

In Williams (Terry) v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined the operative review standard in a habeas corpus action brought pursuant to 28 U.S.C. § 2254. Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 405. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law; or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Id. at 407-08. It is this prong of the AEDPA standard of review which directs deference be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120 (2008). Thus, extrapolations of

settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority, in arriving at their decision. Early v. Packer, 537 U.S. 3 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The Los Angeles County Superior Court issued a reasoned decision denying petitioner's habeas petition raising the claim raised in the instant petition. (Dkt. No. 10-1, at 132-134 of 136.) The California Court of Appeal and California Supreme Court summarily denied petitioner's petitions raising the claim raised in this action. (Id., at 138, 164.) Accordingly, the undersigned considers whether the denial of petitioner's claim by the Superior Court was an unreasonable application of clearly established Supreme Court authority.

1  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (when reviewing a state court's
2  summary denial of a claim, the court "looks through" the summary disposition to the last
3  reasoned decision.)
4  III.  Analysis
5       The Due Process Clause of the Fourteenth Amendment to the United States
6  Constitution prohibits state action that "deprive[s] a person of life, liberty or property without
7  due process of law." U .S. Const. amend. XIV, § 2.  A person alleging a due process violation
8  must demonstrate that he or she was deprived of a protected liberty or property interest, and then
9  show that the procedures attendant upon the deprivation were not constitutionally sufficient.
10 Kentucky Dep't. of Corrs. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan,
11 306 F.3d 895, 900 (9th Cir. 2002).  A protected liberty interest may arise from either the Due
12 Process Clause itself or from state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).
13 In the context of parole, the United States Constitution does not, in and of itself, create a
14 protected liberty interest in the receipt of a parole date, even one that has been set.  Jago v. Van
15 Curen, 454 U.S. 14, 17-21 (1981).  However, when a state's statutory parole scheme uses
16 mandatory language, it "'creates a presumption that parole release will be granted' when or
17 unless certain designated findings are made, thereby giving rise to a constitutional liberty
18 interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Neb. Penal, 442 U.S.
19 1, 12 (1979)).
20       Under California law, prisoners serving indeterminate prison sentences "may
21 serve up to life in prison, but they become eligible for parole consideration after serving
22 minimum terms of confinement." In re Dannenberg, 34 Cal.4th 1061, 1078, 23 Cal.Rptr.3d 417
23 (2005).  Generally, one year prior to an inmate's minimum eligible parole release date, the Board
24 will set a parole release date "in a manner that will provide uniform terms for offenses of similar
25 gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal.4th 1181,
26 1202, 82 Cal.Rptr.3d 169 (2008) (citing Cal.Penal Code § 3041(a)).  A release date will not be

4

set, however, if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration. . . ." Cal. Penal Code § 3041(b).

California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12); Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006)); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.

In the context of parole proceedings, it is well established that inmates are not guaranteed the "full panoply of rights" afforded to criminal defendants under the Due Process Clause. See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987). Nonetheless, inmates are afforded limited procedural protections. The Supreme Court has held that a parole board's procedures are constitutionally adequate so long as the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. Hayward v. Marshall, 603 F.3d 546, 560 (9th Cir. 2010) (quoting Greenholtz, 442 U.S. at 16). As a matter of state constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating future dangerousness. Hayward, 603 F.3d at 562 (citing In re Rosencrantz, 29 Cal.4th 616, 128, 128 Cal.Rptr.2d 104 (2002)); see also In re Lawrence, 44 Cal.4th at 1191 (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); In re Shaputis, 44 Cal.4th 1241, 1254, 82 Cal.Rptr.3d 213 (2008) (same). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of [the] state," Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), and compliance with this evidentiary standard is, therefore, mandated by the federal Due Process Clause. Pearson v. Muntz, 606 F.3d 606, 611 (9th Cir. 2010). Thus, a

federal court undertaking review of a "California judicial decision approving the . . . decision rejecting parole" must determine whether the state court's decision "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(2)).

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. The court must look to California law to determine what findings are necessary to deem a petitioner unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by "some evidence" or whether it constituted an unreasonable application of the "some evidence" principle. Id.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. In re Lawrence, 44 Cal.4th at 1202. The Board is directed to consider all relevant, reliable information available, including the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. 15 Cal.Code Regs. § 2402(b).

The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. § 2402(c)-(d). Factors tending to show

unsuitability include:

 (1) The Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.

  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

  (C) The victim was abused, defiled, or mutilated during or after the offense.

  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

 (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

 (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

 (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

 (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

 (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(15 Cal. Code Regs. § 2402(c).)

 Factors tending to show suitability include:

 (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

 (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

 (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse such as attempting to repair the damage, seeking

7

>help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
>(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
>
>(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
>
>(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
>
>(7) Age. The prisoner's present age reduces the probability of recidivism.
>
>(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
>(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

(15 Cal. Code Regs. § 2402(d).)

The overriding concern is public safety, In re Dannenberg, 34 Cal.4th at 1086, and the focus is on the inmate's current dangerousness. In re Lawrence, 44 Cal.4th at 1205. Thus, under California law, the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that a parolee's release would unreasonably endanger public safety. In re Shaputis, 44 Cal.4th at 1241. Therefore, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." In re Lawrence, 44 Cal.4th at 1212. In other words, there must be some rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. Id. at 1227.

The BPH found petitioner unsuitable for parole in 2008 for the following reasons. The BPH found petitioner unsuitable based on his extensive criminal record. (Dkt. No. 1, at 114

of 130.) The BPH also found petitioner unsuitable based on his prison disciplinary record. (Id., at 115.) The BPH also found petitioner unsuitable based on factors relating to the commitment offense. In particular, the BPH found that the commitment offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering. (Id., at 116.) The BPH found that the motive for the crime was trivial. (Id.) The BPH also found that the psychological report was not totally supportive. (Id.) Finally, the BPH found that petitioner's parole plans were not adequate. (Id., at 116-17.)

At the 2008 hearing, the BPH adopted the statement of the offense contained in the probation report. (Id., at 54). The probation report states, in relevant part:

> The deceased in the present offense was one Barry Scoggins, age 26, 5'1", 160 pounds. On April 25, 1979, at approximately 8:05 p.m. the inmate confronted the victim in the residence of one Charles Young at 1523 ½ South Redondo Boulevard, Los Angeles. An argument ensued between the inmate and victim concerning $15 that was owed to the inmate by the victim. Inmate brandished a revolver and fired one shot into the wall of the residence. At this time, the inmate and the victim left the residence and went outside of the apartment to a nearby walkway. The argument continued with the inmate firing another shot at the victim. This bullet hit the victim in the upper left chest. The victim turned and ran about 200 yards to a vacant lot and on the premises of a nearby apartment complex. He thereafter collapsed. Rescue equipment responded to the scene and pronounced the victim dead on arrival.
>
> Inmate, meanwhile, fled the scene in the company of an unknown female who drove him away in a vehicle. Officers conducted an investigation and identified the inmate as Alfred King. The inmate subsequently contacted Wilshire detectives on April 26, 1979, and turned himself in. He was thereafter placed under arrest and booked on suspicion of murder. One of the witnesses found a knife with a six inch serrated blade near the area where the argument and shooting occurred. This knife was turned over to police.
>
> Defendant's Statement
>
> The defendant declined to be interviewed by the probation officer. He explained: "Because I'm going to prison anyway, that doesn't make any difference."

////

////

9

Interested Parties

> Probation officer talked with the investigating Wilshire detective, homicide officer, and he stated that it appears as if defendant's mother drove him away from the murder scene. The weapon which the defendant used was subsequently turned over to officers by defendant's stepfather, to whom defendant apparently gave the weapon after the shooting. The knife that was found in the area was given to the officer by one of the witnesses. The argument which proceeded the shooting was over money owed to the defendant allegedly by the deceased relative to a previous sale of narcotics. One of the witnesses to the shooting stated in effect that the deceased was attempting to flee the area and was "begging for his life," before he was shot.

(Dkt. No. 1, at 36-38.)[2]

Petitioner's criminal history was described at the hearing. Petitioner had no significant juvenile criminal history. (Id., at 70.) In 1970, petitioner was convicted of heroin possession and battery. (Id., at 70-71.) In 1971, petitioner was convicted of grand theft auto. (Id., at 72.) In 1972, petitioner was convicted of selling cocaine and marijuana. (Id.) In 1974, petitioner was convicted of weapons possession. (Id., at 73.) In 1975, petitioner was convicted of marijuana possession. (Id.) In 1976, petitioner was convicted of petty theft. (Id.) In 1976, petitioner was convicted of assault with a deadly weapon. (Id., at 33, 74.) In 1977, petitioner was convicted of petty theft. (Id., at 75.) In 1978, petitioner was convicted of defrauding an inn keeper and petty theft. (Id., at 76.)

Petitioner's prison disciplinary history was described at the hearing. Petitioner had twenty-one prison disciplinary convictions during his incarceration. (Id., at 91.) Petitioner had thirty administrative disciplinaries, i.e. "128s," during his incarceration. (Id., at 92.) Petitioner's last disciplinary conviction was in 1995 for a cell fight. (Id., at 91-92.) In 1995,

---

[2] At the 2008 hearing, petitioner stated that he shot the victim after he (the victim) pulled out a knife and came toward him after petitioner refused to sell him drugs. (Id., at 63.) Petitioner also stated that his first jury trial ended in a hung jury. (Id., at 67.) After that, the district attorney offered to let him plead guilty to manslaughter, but his attorney recommended that he go to trial. (Id.)

petitioner had another disciplinary conviction for attempting to smuggle marijuana into the prison, during which petitioner's mother attempted to smuggle eight small bundles of marijuana into the prison. (<u>Id</u>., at 115-16.)  Petitioner had five disciplinary convictions concerning drugs, refusing to drug test and involving pruno. (<u>Id</u>., at 116.)  Petitioner's last administrative disciplinary was from July 2004 for delaying lockup. (<u>Id</u>., at 92.)

        The BPH also found that the psychological report was not totally supportive of parole.  The psychological report, prepared in 2006, concluded that petitioner's risk for violent behavior within a controlled setting was low relative to the inmate population. (<u>Id</u>., at 128.) The psychological report stated if released to the community, petitioner's risk for violent behavior was at the low-moderate level. (<u>Id</u>., at 129.)

        The BPH found that petitioner's parole plans were not stable.  Petitioner stated that if paroled, he planned to live with his father. (<u>Id</u>., at 78.)  The BPH observed that the letter from petitioner's father stating that petitioner could live with him was not dated. (<u>Id</u>., at 116-17.) The BPH told petitioner that he needed a current updated letter from his father stating that petitioner could live with him. (<u>Id</u>., at 117.)

        In upholding the decision of the BPH, the Los Angeles County Superior Court made the following relevant findings:

> The Court finds that there is no evidence to support the Board's finding that the offense was carried out in [a] manner which demonstrates an exceptionally callous disregard for human suffering.  Cal. Code Regs., tit. 15, § 2402(c)(1)(D).  An "exceptionally callous disregard for human suffering" means that the offense in question must have been committed in a more aggravated or violent [manner] than that ordinarily shown in the commission of second degree murder."  <u>In re Scott</u> (2004) 119 Cal.App. 871, 891.  Petitioner did the minimum necessary to commit his crime.  <u>See</u> <u>In re Lee</u> (2006) 143 Cal.App.4th 1400, 1412.
>
> The Court also finds that there is no evidence to support the Board's finding that the motive for the crime was inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15,§ 2402(c)(1)(E).  The record appears to substantiate the petitioner's claim that the victim had a knife, as one of the witnesses found a

Case 2:09-cv-02366-FCD-KJN   Document 14   Filed 10/25/10   Page 12 of 14

six-inch serrated blade near the area where the argument and shooting occurred. Probation Report, page 8. Thus, the petitioner may have determined that he was in some danger, and his reaction would be neither explicable nor very trivial under such circumstances.

However, there is some evidence to support the Board's finding that the petitioner had an extensive previous criminal history. Cal. Code Regs., tit. 15, § 2402(c)(2). According to the record, the petitioner was convicted of possession of heroin, battery, grand theft auto, possession of a loaded firearm, grand theft merchandise, attempted murder, burglary and receiving stolen property. The Board noted that he had been arrested nearly 30 times over a 10 year period.

The California Supreme Court recently noted that the Board may base a denial or reversal of parole on the circumstances of the commitment offense or other immutable factors, such as the prior criminal record, if those facts support the ultimate conclusion that the inmate continues to pose an unreasonable risk to public safety. In re Lawrence (2008) 44 Cal.4th 1181, 1221. Thus, the issue is whether petitioner's previous criminal record, when considered in light of other facts in the record, including the passage of time and attendant changes in the inmate's psychological or mental attitude, are such that it continues to be predictive of current dangerousness. Id. at page 1221.

The petitioner's institutional behavior provides such evidence. The Court finds that there is some evidence to support the Board's finding that petitioner had 21 115s while in prison. Cal. Code Regs., tit. 15, § 2402, subd. (c)(6). The petitioner's most recent 115 occurred in 1995 and included a cell fight and smuggling drugs into prison. His continued violence and serious misconduct while in prison indicates a lack of rehabilitation and, as a result, the petitioner's criminal history and committing offense continue to be predictive of current dangerousness. In re Lawrence, supra, 44 Cal.4th at 1228. Furthermore, the petitioner's psychological report was not fully favorable as it indicated that he was a low to moderate risk of future violence if released from prison. Thus, his institutional behavior, coupled with the psychological report, do provide a nexus between the petitioner's extensive criminal history and his current dangerousness.

The Board also noted that the District Attorney's Office had opposed the petitioner's release. While this is not a factor on which the Board may rely to deny parole, such opposition may be properly considered. Penal Code § 3402.

The Board cited several positive gains that the petitioner has achieved while incarcerated. He has nearly completed enough college credits to receive a BA degree and he has three vocational

12

>trades. His family has also given him a large sum to assist him if he were released from prison. However, the Board concluded that despite the petitioner's recent gains, the petitioner posed an unreasonable threat to public safety at the time of its hearing. Penal Code § 3041(b).
>
>Accordingly, the petition is denied.

(Dkt. No. 10-1, at 132-34.)

After reviewing the record, the undersigned finds that the Superior Court's finding that the 2008 decision by the BPH was supported by some evidence was not an unreasonable application of clearly established Supreme Court authority. The undersigned agrees that petitioner's criminal record was still predictive of his current dangerousness based on his prison disciplinary record.[3] While petitioner's last prison disciplinary convictions were thirteen years prior to the 2008 suitability hearing, they were still relevant given their nature and number. In addition, the finding of the psychological report that petitioner would be a low to *moderate* risk if released also was some evidence of his current dangerousness.

Petitioner's prison record for the past several years has been positive. He has maintained his sobriety and participated in alcohol and drug programs. Petitioner has also upgraded vocationally and taken college courses. At some point, petitioner's positive programming will outweigh his negative prison disciplinary record and criminal history.

IV. Conclusion

The undersigned recommends that petitioner's application for a writ of habeas corpus be denied. If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability

---

[3] The Superior Court stated that petitioner had a prior conviction for attempted murder. The probation report states that petitioner was originally charged with attempted murder, but it appears that the charges were later reduced to assault with a deadly weapon. (Dkt. No. 1, at 33.) Petitioner was sentenced to three years probation and ordered to serve 180 days in jail for this offense. (Id.) The Superior Court also stated that petitioner had a conviction for burglary. The probation report states that in 1977, petitioner was charged with burglary which was later reduced to petty theft. (Id., at 34.)

may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   October 22, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ki2366.157